UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| SHAMEKA GREEN, | ) | Civil Action No. 3:15-CV-2581-JMC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| THE BRADLEY COMPANY AND | ) | **DEFENDANT OPEN PLAN SYSTEMS,** |
| HMU, LLC, | ) | **LLC F/K/A HMU, LLC'S** |
| | ) | **MEMORANDUM IN SUPPORT OF ITS** |
| Defendants. | ) | **MOTION FOR EXCLUSION OF** |
| | ) | **PLAINTIFF'S EXPERT AND FOR** |
| THE BRADLEY COMPANY, | ) | **SUMMARY JUDGMENT** |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| HIGNITE ENTERPRISES, LLC, | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

COMES NOW, Defendant Open Plan System, LLC incorrectly identified in the caption as HMU, LLC ("Defendant" or "OPS"), by and through its undersigned attorneys, and hereby submits this Memorandum of Law in support of its Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and other relevant authority as more fully set forth herein. OPS asserts there are no genuine issues of material fact, and OPS is entitled to Summary Judgment on all remaining claims. Plaintiff has failed to establish that either the incident described in the Complaint or her resulting injuries occurred because the desk system was in a defective condition attributable to OPS. Plaintiff has failed to show why the subject desk failed. Plaintiff has failed to show that the desk causing her injury was defective and/or was in the same condition as it was when OPS sold the desk. Plaintiff has failed to show the desk in

question was one in which OPS supplied or if and when OPS or any other entity last inspected or altered the desk.

Additionally, Plaintiff's expert lacks sufficient opinions to support Plaintiff's claims and any opinion provided by the Plaintiff's expert is based on insufficient facts and data, and unreliable principles and methods. Because of this, all proposed testimony of the said expert should be excluded by the Court. Without any expert testimony to establish a defective condition in the desk without the desk itself, and without any exemplar desk from the batch allegedly provided by OPS, Plaintiff's claims for breach of warranty fall short as a matter of law.

Finally, if the Court applies the Indeterminate Product Defect test from the Restatement (Third) of Torts[1], Plaintiff fails to present any evidence that could show the incident was not solely the result of causes other than the alleged defect in the desk system. As part of that failure, Plaintiff fails to present any evidence to show the desk was in essentially the same condition at the time of the accident as it was when it left the hands of OPS.

## STATEMENT OF FACTS AND CASE

On June 3, 2014, Plaintiff filed her Complaint in the Court of Common Pleas for the County of Richland (2014-CP-40-03559), alleging a cause of action against another defendant. On May 15, 2015, Plaintiff filed an Amended Complaint naming (for the first time) Defendant OPS. The Amended Complaint alleged causes of action for Negligence, Breach of Implied Warranty of Merchantability under § 36-2-314 of the S.C. Code Ann., and Breach of Implied Warranty of Fitness for a Particular Purpose under § 36-2-315 of the S.C. Code Ann. (Amended Complaint ¶ 11-15). Specifically, Plaintiff alleges she was injured in an incident on September 23, 2011 involving the collapse or breaking of a desk in her Richland County workplace at

Teleperformance.  Plaintiff alleges the desk unit in question was refurbished by OPS and installed by the Bradley Company at the Teleperformance workplace.  The Bradley Company filed a third Party claim against Hignite Enterprises, alleging Hignite was responsible for the installation of the desk systems in question. (Docket Entry No. 17).

Defendant filed a motion for dismissal of all claims on July 2, 2015, pursuant to the applicable statute of limitations. (Docket Entry No. 4).  On July 7, 2016, the Court, after a motion to reconsider, granted OPS's motion to dismiss as it related to the negligence claim of the Plaintiff. (Docket Entry No. 51).  Plaintiff therefore now proceeds against OPS under the two remaining breach of implied warranty causes of action listed in her Complaint, which Defendant contends are truly one joined into a single claim for Breach of Implied Warranty of Merchantability.

On July 8, 2016, Plaintiff filed her expert disclosure naming Bryan Durig of Summit Engineering as her expert. (Docket Entry No. 52).  Plaintiff has never supplemented Mr. Durrig's opinions.

Plaintiff, through her expert, has not established a cause of collapse to a reasonable degree of engineering certainty. The desk unit in question is not available, nor is an exemplar. (Docket Entry No. 52).  Assuming the desk in question was a OPS desk (and the same has not been proven), Plaintiff's expert does not know when or how the desk was altered, but the parties agree that the desks were reinstalled and/or altered at least one time after initial installation. Because of the lack of information about the desk, Plaintiff cannot establish the desk was in a defective condition when it left the possession of OPS, or that some defect attributable to OPS

---

[1] Defendant maintains the Indeterminate Product Defect Test has never been applied under South Carolina law, and is in conflict with well-established South Carolina product liability case law.  Defendant addresses this topic solely because it was mentioned by the Court in a prior document.

caused the collapse of the desk. There is no competent evidence by which a reasonable jury could conclude the desk in question was defective, much less, that OPS caused a defective condition to exist or sold the desk in a defective condition. Moreover, there is no competent evidence to establish that any defect in the desk caused Plaintiff's injuries. Although Plaintiff established OPS were involved in the sale of some desks which were installed at Teleperformance in 2009, Plaintiff has not proven that the desk that injured her in 2011 was an OPS desk.

OPS, through the opinion of its retained engineering expert, Mark Russell, Ph. D., P.E.,, further supports its argument that the cause of the accident "cannot be determined and is unknown." (Docket Entry No. 53). Without any way to obtain the information necessary to render a reliable opinion as to causation, Plaintiff's claims fail as a matter of law.

On November 14, 2016, the court heard OPS's previous version of this Summary Judgment Motion. Based on Plaintiff taking the position that Defendants' motions were "patently premature at best and likely to become completely unwarranted when further evidence is developed," the Court denied Defendants motions **without prejudice** (emphasis added)(Docket Entry No. 62). The Court then granted Plaintiff's oral motion to extend the deadlines of the then existing Third Amended Scheduling Order, after all prior amendments were also requested by the Plaintiff. (Id.) The Court then adopted another amended scheduling order, giving the Plaintiff an additional 90 days on all current deadlines.

Since the Court's gracious fourth extension of time to the Plaintiff, the Plaintiff has only taken two depositions: Christopher Naylor on March 7, 2017 and Hugh Hutcherson on April 5, 2017. (Exhibits A and B). Neither of those depositions created evidence which has led Plaintiff to find the subject desk. Likewise, Plaintiff has yet to discover, inspect or identify an exemplar

desk and Plaintiff's expert has not made such an analysis.  More importantly, Plaintiff's expert has not drafted or submitted any supplemental report which in any way bolsters the Plaintiff's position or gives the needed expert opinion that Plaintiff must have to succeed in this case.

In fact, the deposition of Hugh Hutcherson shed even more questions on Plaintiff's claim. Mr. Hutcherson, an OPS employee, testified about the initial sale, installation, and repairs of a group of 340 work stations which were sold by OPS to The Bradley Company and ultimately installed by Highnite Enterprises, LLC at the Teleperformance facility in South Carolina.  Mr. Hutcherson confirmed that there were issues related to some of the desks not being installed properly and one of the issues included the identification of approximately 25 desks containing cantilevers with excessive paint.  All of the 340 desks were reinstalled and inspected by the various Defendants.  This reinstallation and the revisions made to the desks should be considered material alterations which void a breach of warranty claim, and OPS reminds the court that all claims against it for negligence have been dismissed with prejudice.

Mr. Hutcherson confirmed that the desks did not have any problems after November 2009 other than select instances of employee abuse.   He confirmed there were not any complaints about issues with the desks in 2010 or 2011 before Plaintiff's accident.

Additionally, Hugh Hutcherson testified to other ways in which the desks can fail.  One way is simply by having the employer and/or an employee alter the height of the desks by moving the brackets on their own.  If such an action is taken, then the desk not only fails to be in the same condition that it was when it left the control of OPS but also becomes in a condition different then it was when any of the Defendants reinstalled, reinspected or last touched the desk. Because the subject desk is not available, none of the parties have any way to determine whether such alterations were made to that desk prior to Plaintiff's accident.  Plaintiff has not produced

any evidence supporting its contention the desk was in the same condition as it was when delivered and installed despite ample time to conduct discovery.  The preponderance of evidence is that the desks were subjected to extreme wear and tear over a two year period at Teleperformance in which up to 700 employees used the desks 18 hours a day, seven days a week.

In short, the only two depositions taken since the Court granted Plaintiff a fourth opportunity to conduct more discovery, have revealed at least one other way in which the accident could have occurred that is unrelated to any Defendant, but did not shed any light supporting Plaintiff's allegations against the Defendants.  Instead, Plaintiff's attorney, who has worked extremely hard on this case and done everything he can to create the best argument possible, is left with a case in which his client cannot produce the desk that injured her, an exemplar of the desk that injured her, any evidence of the condition of the desk which injured her, any evidence of whether the desk that injured her was defective or any evidence regarding whether the desk in which she was injured was altered in any way. Plaintiff cannot even prove the desk at issue was actually an OPS desk (although everyone has assumed this throughout the life of this case).  Additionally, Plaintiff's expert does not know if the desk which injured her was one of the very few (approximately 25 out of 340) that had an issue with overpainting of the cantilevers and, of course, Plaintiff's expert cannot testify that the desk was in the same condition at the time of Plaintiff's accident as it was when it left the control of OPS.

## **STANDARD OF REVIEW**

### **I. Expert Testimony**

The admissibility of expert evidence is governed by Rule 702 of the Federal Rules of Evidence.  Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if:
>
> a. the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> b. the testimony is based on sufficient facts or data;
>
> c. the testimony is the product of reliable principles and methods; and
>
> d. the expert has reliably applied the principles and methods to the facts of the case.

Rule 702 imposes an obligation on the trial judge to ensure that any expert testimony grounded in scientific, technical, or other specialized knowledge "is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. With regard to reliability, the Supreme Court of the United States set forth a list of four non-exclusive factors in *Daubert* for assessing the reliability of an expert's testimony. Those factors are as follows:

> a. whether the expert's theory or technique can be, and has been, tested;
>
> b. whether the theory or technique has been subjected to peer review and publication;
>
> c. the known potential rate of error when the technique or theory is applied; and
>
> d. whether the theory or technique enjoys "general acceptance" in the relevant community.

*Id.,* 509 U.S. at 593-94.

The proponent of the expert testimony must establish its admissibility by a preponderance of proof. *Cooper v. Smith & Nephew, Inc.,* 259 F.3d 194, 199 (4th Cir. 2001) (citing *Daubert,* 509 U.S. at 592 n.10.).

In evaluating the admissibility of expert testimony, the Court acts as a "gate-keeper" whose primary task is to assess the reliability and relevance of the proffered evidence. *Kumho*

*Tire,* 119 S.Ct. at 1174.  The Court's inquiry as gate-keeper is a "flexible one" focusing on the principles and methodology used by the expert.  *Daubert v. Merrell Dow Pharm., Inc.*, 113 S.Ct. 2786, 509 U.S. 579, 594-95 (1993).  The Court has broad latitude to consider whatever factors it deems useful in evaluating the reliability of proffered testimony.  The factors evaluated by the Court obviously depend upon the type of expert testimony involved.  *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149-50 (1999).

Even if otherwise admissible under Rule 702, expert testimony may still be properly excluded under Rule 403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion, or misleading the jury."  *United States v. Dorsey*, 45 F.3d 809, 815. "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it."  *Daubert*, 113 S.Ct. 2786, 509 U.S. 579 (citation omitted).  "Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403… exercises more control over experts than lay witnesses." *Id.* at 595.

## II. Summary Judgment

To grant a motion for summary judgment, the Court must find that there is no genuine dispute as to any material fact.  *Fed. R. Civ. P.* 56(a).  In determining whether any triable issues of fact exist, the court must view the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr. Inc.,* 915 F.2d 121, 124 (4th Cir. 1990).  "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *TeamstersJoint Council No. 83 v. Centra, Inc.,* 947 F.2d 115, 119 (4th Cir. 1991). Summary judgment is an important mechanism for weeding out claims and defenses that have no factual basis.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The plain language of Rule 56(c) mandates the entry of summary judgment, after an adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id* at 322.

## LEGAL ARGUMENT

**A.      The Plaintiff's proposed expert's testimony should be excluded in accordance with Rules 702, 703, 402 and 403 of the *Federal Rules of Evidence*.**

The Plaintiff asserts that the desk unit in question was in an unreasonably defective condition when she was working for Teleperformance at the time of the incident.  She further asserts OPS failed to properly refurbish the desk in question in accordance with proper industry standards and stability and safety requirements. (*See* Plaintiff's Complaint ¶ 8).   Plaintiff specifically alleges OPS failed to remove the original paint prior to repainting and refurbishing the desk.  *Id.*  The Plaintiff goes on in her Complaint to make claims against OPS sounding in Products Liability and has pled causes of action for Breach of Implied Warranty of Merchantability and Breach of Implied Warranty of Fitness for a Particular Purpose.  *Id* at ¶¶ 13-16.  Plaintiff retained Bryan Durig, a proposed expert in engineering, to testify regarding the alleged defective condition of the desk.  More specifically, Plaintiff relies on the testimony and opinions of Durig to support allegations that Defendants:

> a.      failed to properly refurbish, repaint and reconstruct the desk in question;
>
> b.      failed to properly assemble, install and set up and support the desk in question;
>
> c.      failed to monitor, maintain or otherwise take reasonable measures to assure the integrity and stability of the desk in question; and,

      d.    failed to adhere to applicable standards, guidelines, and regulations for the construction, transportation, installation, assembly, marketing and maintenance of the desk in question.

The Plaintiff alleges that these failures resulted in the damages and injuries she suffered as a result of the desk collapse.  In addressing these issues, Durig issued one report dated July 8, 2016 setting forth his opinion (or lack thereof) relevant to this case.  In his five page report, Durig relied upon 1) the Complaint; 2) Workers Compensation Deposition of Ms. Green; 3) SC Workers Compensation Commission Hearing of Ms. Green; 4) Current Teleperformance facility inspection; 5) Emails between Bradley Company and HMU (OPS); 6) Email to Hignite Enterprises; and, 7) Discussion with Ms. Green.  Durig goes on to state he also relies upon his own knowledge, education, training and experience in investigating numerous fall investigations. Mr. Durig generally relied upon information from emails dated two years prior to the incident described in the Complaint to offer the opinion that improperly installed screws could have contributed and/or caused the desk portion collapse that injured Ms. Green. (Docket Entry No. 52, Plaintiff's Expert Disclosure).  However, Durig's opinions and the basis therefore, uniformly do not meet the requirements of Rule 702 and should be excluded from the trial of the case and the Court's consideration.  Even after the Court's fourth extension to the discovery period allowing two additional depositions, Durig has not supplemented his report or opinion in any way.

The opinions rendered by Mr. Durig do not meet the requirements for admissibility under Rule 702 because his opinions (a) will not help the trier of fact to understand the evidence or determine a fact in issue in this case; (b) are not based on sufficient facts or data; (c) are not the product of reliable principles and methods; and (d) Mr. Durig has not reliably applied any principles or methods to the facts of this case.  In relation to reliability, Mr. Durig's opinions do

not satisfy any of the four factors set out by the United States Supreme Court in *Daubert* that this Court should consider in assessing the reliability of Mr. Durig's testimony:

     a.    Some, if not all, of Mr. Durig's theory or technique cannot be tested;

     b.    Some, if not all, of Mr. Durig's theory or technique has not been subjected to peer review (it is not clear what technique or theory, if any, was employed by Durig);

     c.    The known potential error rate is unknown due to the uncertainty of any technique or theory employed by Mr. Durig; and

     d.    Some, if not all, of Mr. Durig's theory or technique does not enjoy general acceptance in the relevant community.

*Daubert* 509 U.S. at 593-94.

In arriving at his conclusions, Mr. Durig relies upon information contained within emails pertaining to the desks from two years before the alleged incident of Ms. Green. (Docket Entry No. 52, Plaintiff's Expert Disclosure). He provides no evidence or theory to link the issues described in the emails to the desk in question. His final conclusion is mere conjecture and speculation, which cannot be tested without the desk or an exemplar. Neither is available, nor will they be, leaving Mr. Durig's conclusion a speculation at best.

It is unclear what, if any technique Mr. Durig employed in his analysis of the facts of this case. His report simply states that, based on his knowledge and experience, he concludes an improper installation of screws could have contributed or caused the collapse. There is nothing in his report linking an improper installation of screws in the desk at issue. Again, this conclusion is based on mere speculation by the proposed expert.

The known potential error rate of speculation is extremely high. Mr. Durig does not address the myriad of potential causes for the desk failure. It is the large number of variables and possible causes of failure cited by the Defendant's expert as to why the cause of the desktop

falling on the lap of Ms. Green cannot be determined and is unknown. (See Docket Entry No. 53).

In addressing the fourth prong of review, it goes without saying that speculation is not a generally accepted practice in the field of engineering. The Fourth Circuit has held that proffered expert testimony is inadmissible when based on speculative assumptions not supported by the record. *Tyger Constr. Co. v. Pensacola-Constr. Co.,* 29 F.3d 137 (4th Cir. 1994); *see also Bryte ex rel. Bryte v. Am. Household, Inc.,* 429 F.3d 469, 477 (4th Cir. 2005) (noting that the reliability requirement in "Daubert aims to prevent speculation.").

Furthermore, because of the complete lack of probative value attributed to Mr. Durig's proposed testimony, its potential for prejudice should preclude its inclusion in trial based upon Rule 403. His testimony would only serve to confuse and/or mislead the jury as to the causation of the desk collapse. Therefore, the "probative value [of this evidence] is substantially outweighed by the danger of unfair prejudice, confusion, or misleading the jury." *United States v. Dorsey,* 45 F. 3d 809, 815.

For the foregoing reasons, Mr. Durig's testimony should be excluded from the trial because it fails to meet the requirements of Rules 702, 703, 402, and/or 403 of the *Federal Rules of Evidence.*

**B.     Defendant OPS is entitled to Summary Judgment because there is no evidence to establish 1) the desk was in essentially the same condition as it was when OPS sold it; 2) the desk was ever in a defective condition; 3) the injury occurred because the desk was in a defective condition; or 4) whether the desk at issue was even supplied by OPS.**

Under South Carolina law in any products liability case, the plaintiff must establish three things: 1) she was injured by the product; 2) the product was in essentially the same condition at the time of the accident as it was when it left the hands of the defendant, and 3) the injury occurred because the product was in a defective condition. *Graves v. CAS Med. Sys.,* 401 S.C. 63, 735 S.E.2d 650, 658 (2012). Plaintiff originally asserted three causes of action in her Complaint, but only two remain; Breach of Implied Warranty of Merchantability and Implied Warranty for Fitness for a Particular Purpose.

In order for Plaintiff to prevail under a theory of implied warranty of merchantability, she must prove: (1) that OPS sold the desk; (2) that the desk was not "merchantable" at the time of the sale; (3) that she was injured by the desk; (4) the defect or other condition amounting to a breach of the implied warranty of merchantability proximately caused her injury; and (5) she gave timely notice to OPS. *Thomas v. Louisiana-Pacific Corp.*, 246 F.R.D. 505, 511 (U.S.D.C. 2007).

An implied warranty of fitness for a particular purpose arises if "'the *seller* at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the *seller's* skill or judgment to select or furnish suitable goods . . . .'" *Burton v. Chrysler Group LLC*, 2012 U.S. Dist. LEXIS at 13 (*citing* S.C. Code Ann. § 36-2-315). Further, if "'the particular purpose for which a product is purchased is also the ordinary or intended purpose of the product, the warranties of merchantability and of fitness for a particular purpose merge and are cumulative, such that a plaintiff may proceed upon either theory.'" *Id.* at 13-14 (*citing Soaper v. Hope Indus.*, 309 S.C. 438, 424 S.E.2d 493, 495 (S.C. 1992).

Because Plaintiff cannot establish the desk was in a defective condition, the motion for summary judgment should be granted. It is undisputed that the original desk in question is not

available for testing or observation.  It is also undisputed that an exemplar is not available for inspection by the parties' named experts.  Without an analysis of the desk or an exemplar, one is left with no possible way to determine the cause of the desk collapse.  The mere fact a product malfunctions does not demonstrate the manufacturer's negligence nor tend to establish the product was defective.  *Campbell v. Robbins Tire and Rubber Co.,* 256 S.C. 230, 182 S.E.2d 73 (1971)[2].  The plaintiff, through her proposed expert, has not provided any evidence outside of mere speculation about potential problems with the desk, with no evidence supporting those problems caused the collapse described in the Complaint.  OPS's named expert, Mark Russell, supports the position that the cause of the desktop falling on the lap of Ms. Green "cannot be determined and is unknown. (Docket Entry No. 53).  There are a myriad of potential causes for the failure of the desk, including improper use by the Teleperformance employees, insufficient maintenance, improper adjustments to the desks, and other forms of normal wear and tear seen in an expansive operation such as Teleperformance.  The two most recent depositions shed light on the large amount of wear and tear put on the workstations during the two year period between the sale of the desks and the accident described in the Complaint.  (*See* Exhibits A and B).

Defendant further argues that the desk system in question is of such complexity that an expert is required to explain the mechanics of the system and whether a particular defect proximately caused the injury.  This Court requires expert testimony where "a factual issue must be resolved with scientific, technical, or any other specialized knowledge." (*Hickerson v. Yamaha Motor Corp., U.S.A.,* 2016 U.S. Dist. LEXIS 108092 (Quoting *Watson v. Ford Motor Co.,* 389 S.C. 434, 699 S.E.2d 169, 175 (S.C. 2010)).    Other Courts have consistently held that the lack of expert testimony is fatal to a product liability case if the subject of the suit is complex

---

[2] The Court alludes to the indeterminate product defect test  described in the Restatement of Torts (third), which is in conflict with the ruling in this case.

enough that a jury requires the testimony of an expert to link a defect and an alleged injury. *Watson v. Ford Motor Co.,* 389 S.C. at 445, 699 S.E.2d at 175 ("[E]xpert testimony is required where a factual issue must be resolved with scientific, technical, or any other specialized knowledge."); *cf. Esturban v. Mass. Bay Transp. Auth.,* 68 Mass. App. Ct. 911, 865 N.E.2d 834, 835 (Mass. App. Ct. 2007) ("By its nature, an escalator is a complex, technical piece of machinery, whose design and operational requirements are not straightforward. Accordingly, any determination of the dimensions essential to its safe operation is generally beyond the scope of an average person's knowledge."); *Olshansky v. Rehrig Int'l,* 872 A.2d 282, 287 (R.I. 2005) (affirming grant of summary judgment in defect case involving a shopping cart in the absence of expert testimony because "[a]lthough average lay persons use shopping carts every day, we conclude that only an expert who understands the mechanics of constructing such a cart could understand and explain the mechanics of the cart and whether a defect proximately caused an injury such as Mr. Olshansky's").

Because of the inability to examine or reproduce an exemplar of the desk at issue, it is impossible for the Plaintiff to provide relevant and/or reliable expert testimony in this case. There are simply too many potential causes for the desk collapse for an engineering expert to opine which one caused the collapse and subsequent injuries. Plaintiff failed to demonstrate that the desk was in a defective condition when it left the hands of OPS, and has further failed to establish the Defendant was injured because of a defective condition. Without the desk or an exemplar to study, there is no amount of discovery that can lead to a reliable and/or admissible expert opinion to establish these essential elements. Thus, the lack of reliable expert testimony on the issue of the defectiveness of the desk at issue is fatal to the Plaintiff's claims. A plaintiff

may not prevail in a products liability case by relying on the opinion of an expert unsupported by any evidence.

**C.    The indeterminate product defect test should not be applied in this case because it is derived from the Res Ipsa Loquitur theory, which is not followed in South Carolina.**

The Court alluded to the indeterminate product defect test outlined in the Restatement (Third) of Torts § 3 in its text order denying without prejudice OPS's first motion for summary judgment.  (*See* Docket Entry No. 62).  There is no case law in South Carolina adopting the Restatement (Third) of Torts, and, specifically, no South Carolina case law adopting the indeterminate product defect test.   § 3 of the Restatement (Third) of Torts includes a reporter note on the history of the section.  The note refers the history of the section to §328D of the Restatement (Second) of Torts outlining the Res Ipsa Loquitur theory. South Carolina does not follow the doctrine of res ipsa loquitur. See *Snow v. City of Columbia*, 305 S.C. 544,  409 S.E.2d 797,  (Ct. App. 1991).  Because South Carolina does not follow Res Ipsa, this Court should not apply the indeterminate product defect test outlined in § 3 of the Restatement (Third) of Torts which is derived from the Res Ipsa theory.

Two other jurisdictions have applied the indeterminate product defect test; Maryland and New Jersey.  *See Parker v. Allentown, Inc.,* 891 F.Supp.2d 773 (2012) and *Myriak v. Port Auth,* 157 N.J. 84, 723 A.2d 45 (1997).  Both Maryland and New Jersey have adopted the theory of Res Ipsa Loquitur.  *See Mohammad v. Toyota Motor Sales, USA,* 179 Md.App. 693 (2008) and *Myriak.*  If South Carolina were to apply the indeterminate product defect test, it would be the first jurisdiction to do so while also declining to follow the Res Ipsa theory.  The reason being

that the indeterminate product defect test is merely an extension of the Res Ipsa theory, which South Carolina clearly does not follow.

**D.      Even if the indeterminate product defect test is applied to this case, Plaintiff fails to present any evidence to support the incident described in the complaint was of a kind that ordinarily occurs as a result of a product defect or that the incident was not solely the result of causes other than a product defect existing at the time of sale or distribution.**

Assuming the indeterminate product defect test applies in this case, which OPS expressly denies, Plaintiff fails as a matter of law to meet the requirements of the test.  According to the Restatement (Third) of Torts: Products Liability § 3, if a plaintiff cannot prove a specific defect, then it is permitted to rely on the indeterminate product defect test.  This test allows the fact finder to draw an inference that a product is defective where the incident that harmed the plaintiff was (1) of a kind that ordinarily occurs as a result of a product defect; and (2) was not, in this particular case, solely the result of causes other than a product defect existing at the time of sale or distribution.  *Id.*

Plaintiff fails to present any evidence through its expert, or otherwise, to support the notion that the incident described in the Complaint was of a kind that ordinarily occurs as a result of a product defect.  Plaintiff's expert, Durig, has not supplemented his original report to reflect any findings on this issue since the Court's order on OPS's first motion for summary judgment. (Docket Entry No. 62).  Moreover, Hugh Hutcherson and Chris Naylor both identified other ways the desk could fail. (*See* Exhibits A and B)

Even assuming Plaintiff can establish the first prong of the test outlined by § 3 of the Restatement (Third) of Torts, which OPS denies, Plaintiff most certainly fails to establish the second prong.  All evidence produced relating to the maintenance history and treatment of the

workstations after it left the hands of OPS points towards causes other than a defect at the time of sale.  Given the indeterminate product defect test is a circumstantial test, plaintiff must present circumstantial proof.  The burden is on the Plaintiff to rule out other causes for the desk failure. In this case, the only evidence available points to heavy usage, manipulation, misuse and wear and tear of the desk from the time OPS provided the desks.  Plaintiff has the burden to establish the second element of the test through circumstantial proof.  In this case, Plaintiff fails to establish the second element of the test because she presents *no* evidence to *rule out* the malfunctioning of the desk was a product of the installation, alteration, reinstallation, wear and tear, misuse, abuse, moving and/or lack of maintenance.  Through the testimony of Christopher Naylor, we know there were instances of Teleperformance employees pushing desk walls out, leaning on partitions and manipulating to the original setup of the stations.  (*See* Exhibit A, pg 46, ln 1-6, pg 66, ln 12-21, pgs 27-28, ln 23-25, 1-5).  There is no evidence to establish the condition of the Plaintiff's desk at the time of the incident described in the Complaint, or even to support that the desk was even supplied by OPS.  In the two year gap between the time OPS supplied desks to Teleperformance and the date of the incident, up to 700 people working eighteen hours a day, seven days a week provided 13,140 hours of use on the desk if you assume it is even the same desk provided by OPS.

Maryland applies a five part test to evaluate a claim made under the indeterminate product defect test.  *See Parker* at 786.  *Parker* directs the Court to consider five factors: (1) expert testimony as to other possible causes, (2) the occurrence of the accident a short time after the sale, (3) same accidents in similar products, (4) the elimination of other causes of the accident, and (5) whether the accident at issue is "the type of accident that does not happen without a defect." *Id.*

Applying our facts to the five factors considered by the Maryland Courts in *Parker,* Plaintiff fails as a matter of law. The only expert testimony available alludes to the fact there are so many potential causes for the desk falling that the cause cannot be determined. *See* Docket Entry Nos. 52 and 53. The occurrence described by the Plaintiff in her Complain occurred approximately two years after the OPS desks were sold to Bradley and installed by Hignite. Plaintiff cannot establish the type of desk Plaintiff was seated in when the accident occurred or how the accident occurred. Therefore, Plaintiff cannot point to similar products suffering the same accident. Plaintiff has provided no evidence to support the elimination of other causes for the desk collapse. She can point to no maintenance records, testimony, or any other type of evidence eliminating the myriad number of potential causes for the desk collapse. In fact, all evidence acquired supports the theory that improper use, improper maintenance, and heavy wear and tear most likely caused the incident. Finally, Plaintiff can point to no evidence to support the theory that her type of accident does not occur without a defect in the desk. She has no reliable expert testimony to rely on for this point.

The United States District Court for the District of New Jersey dealt with a similar set of facts as the current case in *Franklin Mut. Ins. Co. v. Broan-Nutone, LLC,* 2014 U.S. Dist. LEXIS 87660 (2014). In *Franklin,* the Plaintiff filed a claim for a fire that allegedly originated in a ceiling fan. The fan was partially destroyed in the fire leading the Court to apply the indeterminate product defect test. *Id.* The Court ultimately granted summary judgment for the Defendant because the plaintiff could not establish the second element of the test. Plaintiff produced "no evidence as to the exact or even approximate age of the fan, the length the fan had been in use, whether it had any prior owners, how often it was used and under what conditions, whether it was modified in any way, or whether any maintenance or repairs were performed."

*Id.* The Court went on to cite another case stating "the age and prior usage of the product in relation to expected life span, durability and effective operability without maintenance are the most important considerations in determining whether an inference is permissible that the defective condition existed prior to sale." *Id* citing *Scanlon v. General Motors Corp.,* 65 N.J. 582, 326 A.2d 673 (1974).   In this case, Plaintiff fails to produce any evidence concerning the maintenance, life span, durability, or repairs that would support her claim that the desk contained a defect when sold.  All evidence obtained supports other causes for the incident.

## CONCLUSION

Plaintiff's entire case is based entirely on mere speculation with no evidence to support her contentions.  For Plaintiff to survive this motion, it asks the Court to presume the following speculations:

    a.    The desk at issue was one of the 340 sold by OPS to Teleperformance in 2009;

    b.    The desk was also one of the 25 of 340 displaying the paint issue on the cantilever and that issue was not corrected during the installation and/or inspection;

    c.    The desk was not manipulated or modified in any way in the two year period before plaintiff's accident.

    d.    The desk was in essentially the same condition in 2011 as it was when OPS sold the desk to The Bradley Company in 2009 despite 13,140 hours of use by up to 700 people; and,

    e.    No misuse or adjustments were performed on the desk between time of sale and the accident despite testimony of routine misuse and adjustments by Teleperformance employees during this time period.

Plaintiff fails to establish the necessary elements to establish a product liability claim in South Carolina, and, additionally, fails to establish the necessary elements to establish a claim under the indeterminate product defect theory.

Moreover, the opinions, testimony and evidence of and offered by Plaintiff's expert, Bryan Durig, should be excluded from the trial of this case because the evidence fails to meet the requirements of Rules 702, 703, 402, and/or 403 of the *Federal Rules of Evidence*. Consequently, there is no genuine issue of material fact and the Defendant is entitled to judgment as a matter of law.

McANGUS GOUDELOCK & COURIE, L.L.C.

*s/Sterling G. Davies*

Sterling G. Davies, Fed. ID No. 6288
sdavies@mgclaw.com
Gregory B. Collins, Fed. ID No. 10350
greg.collins@mgclaw.com
Post Office Box 12519, Capitol Station
Meridian, 1320 Main Street, 10th Floor (29201)
Columbia, South Carolina 29211-2519
(803) 779-2300
ATTORNEYS FOR DEFENDANT, OPEN PLAN
SYSTEMS, LLC F/K/A HMU, LLC

May 5, 2017